UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

RDK NY INC. d/b/a GREEN ANGEL CBD,
OREN LEVY and RONEN LEVY,

               Plaintiffs,

           -against-

THE CITY OF NEW YORK, POLICE OFFICER
RODNEY GREENIDGE, POLICE OFFICER
JOSHUA GANSHAW, and FEDEX GROUND
PACKAGE SYSTEM, INC.

              Defendants.

------------------------------------x

**MEMORANDUM & ORDER**
21-CV-01529(EK)(JAM)

ERIC KOMITEE, United States District Judge:

       This case arises out of the seizure of a substantial volume of hemp products.  Oren Levy owns and operates RDK NY, Inc., which does business as "Green Angel CBD."  Levy ordered the hemp from a company in Vermont and arranged for it to be delivered to his brother Ronen in Brooklyn.  Along the way, however, FedEx and certain police officers came to believe that the shipment contained marijuana.  When Ronen Levy arrived at a New York City police precinct to retrieve the packages, he was arrested, held overnight, and charged with multiple felonies.  These charges were later dismissed.  While the hemp was in police custody, however, it spoiled and was rendered unsaleable.

       The three plaintiffs — both Levy brothers and RDK NY — sued, asserting a number of federal- and state-law claims.

Before the Court are two motions to dismiss: one filed by FedEx Ground Package System, Inc. ("FedEx"), and one by the City of New York, Officer Rodney Greenidge, and Officer Joshua Ganshaw (the "Municipal Defendants").  For the reasons discussed below, these motions are granted in part and denied in part.

## I.   Background

The following facts are taken from the Third Amended Complaint ("TAC" or the "complaint"), ECF 66, and are assumed to be true unless otherwise indicated.

Oren Levy was, at all times relevant to this case, in the business of buying and selling hemp products through RDK NY, Inc. ("RDK").  TAC ¶ 21.  In November 2019, he placed an order to purchase 106 pounds of hemp products from Fox Holler Farms in Vermont for $17,000.  *Id.* ¶ 22; *see also id.* ¶ 38 (social-media post showing dozens of bags of confiscated product).  Although he was initially planning to receive the shipment himself, he ended up being hospitalized and arranged for it to be sent to his brother Ronen's address in Brooklyn.  *Id.* ¶ 23.

After FedEx accepted the shipment, its driver came to believe that the packages contained marijuana.  The company reported this observation to police in Vermont, who then "seized" the package and notified Oren[1] that they had done so.

---

[1] This order will sometimes refer to Oren and Ronen Levy by their first names, in light of the shared surname.

*Id.* ¶¶ 24-25.  After reviewing "documents provided by Fox Holler Farm contained in the shipment," however, the Vermont police concluded that the shipment contained "federally legal hemp product" and returned the packages to FedEx.  *Id.* ¶¶ 26-27.

Despite this outcome, the "same" FedEx driver "took the shipment to the 75th Police Precinct in Brooklyn, New York, and "falsely" reported to officers there that it contained marijuana.  *Id.* ¶¶ 28-29.[2]  The driver also presented the same Fox Holler shipping documents to those officers.  *Id.* ¶ 30.  The officers maintained custody of the packages, and on November 2, 2019, when Ronen "voluntarily arrived" at the precinct to retrieve the hemp, Officers Greenidge and Ganshaw arrested him.  *Id.* ¶¶ 33-34.  Ronen was charged in Kings County with multiple felonies, including criminal possession of marijuana, *id.* ¶ 35, though these charges were ultimately dismissed.  *Id.* ¶ 99.  The shipment was also seized and, while in the police's custody, became "unfit for sale to the general public."  *Id*. ¶ 62.

The plaintiffs have brought multiple claims, breaking down into two categories: claims arising from the seizure of the shipment, and claims arising out of the arrest and prosecution

---

[2] FedEx appears to deny that the *same* driver alerted both states' police, writing that "[s]eparate FedEx Ground personnel in separate stations (Vermont and New York) took the reasonable step of reporting to law enforcement that the packages in question may have contained marijuana." FedEx Defs.' Mem. in Supp. of Mot. to Dismiss ("FedEx Mem.") 20, ECF No. 68-3; *see also id.* (asserting that FedEx's "'left hand' in New York did not know what had previously transpired in Vermont"). But the Court is of course bound, at this stage, to accept plaintiffs' allegations as true.

of Ronen.  Given the assertion of multiple claims by multiple

plaintiffs against multiple defendants, a chart of these claims

is appended hereto as Appendix A.

This case was initially brought in state court but was

removed to this Court.  Notice of Removal, ECF No. 1.  The

plaintiffs moved to remand the action to state court, but I

denied that motion, largely on the basis that Oren and RDK's

state law claims were completely preempted by the Carmack

Amendment.  Mem. & Order, ECF No. 41.  The plaintiffs have since

amended their complaint multiple times, and the operative

complaint is the Third Amended Complaint.

## II.  Legal Standard

On a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), "the court's task is to assess the legal

feasibility of the complaint." *Lynch v. City of New York*, 952

F.3d 67, 75 (2d Cir. 2020).[3]  In doing so, the Court "must take

the facts alleged in the complaint as true, drawing all

reasonable inferences in [the plaintiff's] favor." *In re NYSE

Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  "In

adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the

---

[3] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. Claims Brought by Oren Levy and RDK

Oren Levy and RDK allege that FedEx violated the Carmack Amendment to the Interstate Commerce Act, which provides a remedy for packages lost or damaged by carriers. They also bring state-law claims against the three Municipal Defendants for conversion, trespass, and "tortious interference with personal property"; negligence; and negligent hiring and retention. FedEx moves to dismiss the first claim, and the Municipal Defendants move to dismiss all claims brought against them. We consider these claims, and the asserted bases for dismissal, in turn.

**A.   Violation of the Carmack Amendment**

Oren Levy and RDK bring claims against FedEx pursuant to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706.  The Carmack Amendment "addresses the subject of carrier liability for goods lost or damaged during shipment, and most importantly provides shippers with the statutory right to recover for the *actual loss* or injury to their property caused by any of the carriers involved in the shipment."  *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994).

FedEx moves to dismiss this claim on the basis that their Ground Tariff — a part of their Service Guide that serves as FedEx's contract of carriage — listed hemp products among the items that shippers are prohibited from tendering in the FedEx ground network.  *See* FedEx Defs.' Mem. in Supp. of Mot. to Dismiss ("FedEx Mem.") 20-21, ECF No. 68-3; Decl. of Ryan P. Stewart, Esq. in Supp. of Mot. to Dismiss ("Stewart Decl.") ¶¶ 8, 11.  The Tariff, FedEx contends, operates as a contractual waiver of liability for delay, loss, or damage to shipments containing such items.  *Id.*

As an initial matter, it is not clear that the Tariff is cognizable on this motion, as the plaintiffs did not attach it to the complaint or incorporate it therein by reference.  Nor does the complaint "rel[y] heavily upon its terms and effect," such that it can be considered "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). FedEx asserts that judicial notice is nevertheless appropriate, given that the Tariff's existence (and contents) "can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Judicial notice may, in appropriate circumstances, extend to "information contained on websites where the authenticity of the site has not been questioned." *Fernandez v. Zoni Language Ctr., Inc.*, No. 15-CV-6066, 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016).

Courts in this circuit have, however, declined to take judicial notice of common carrier tariffs like the one at issue here. *See Berger v. JetBlue Airways, Corp.*, No. 22-CV-7374, 2024 WL 4107243, at *4 & n.6, n.7 (E.D.N.Y. Sept. 6, 2024) (declining to take judicial notice of airline's contract of carriage based on "undated and unsworn" screenshots of defendants' website); *Lichten v. E. Airlines*, 8 F.R.D. 138, 140 (S.D.N.Y. 1948) (declining to judicially notice common carrier's tariffs regarding baggage transportation).  Even when judicial notice of a document can be taken on a motion to dismiss, the document is generally not considered for the truth of the matters asserted therein.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008).  And "[t]he existence of a tariff is not in itself sufficient to limit

7

liability." *Mech. Tech. Inc. v. Ryder Truck Lines, Inc.*, 776 F.2d 1085, 1088 (2d Cir. 1985).

The Carmack Amendment allows a carrier to limit its liability "to a value established by written or electronic declaration of the shipper or by written agreement between the carrier and shipper if that value would be reasonable under the circumstances surrounding the transportation." 49 U.S.C. § 14706(c)(1)(A). For such a limitation to be enforceable, it must (1) be "set forth in a reasonably communicative form;" and (2) "offer the shipper a possibility of higher recovery by paying the carrier a higher rate." *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 59-60 (2d Cir. 2000) (quoting *Shippers Nat. Freight Claim Council, Inc. v. I.C.C.*, 712 F.2d 740, 746 (2d Cir. 1983)); *see Martino, S.A. v. Transgroup Express*, 269 F. Supp. 2d 448, 449-50 (S.D.N.Y. 2003).

Judicial notice aside, FedEx cannot establish at this stage that its tariff was "reasonably communicative." In this context, for a tariff to be "reasonably communicative," it must "result in a fair, open, just and reasonable agreement between carrier and shipper." *Nippon*, 235 F.3d at 59. In making this assessment, courts look, for example, to whether it was "a reasonably prominent writing, not in particularly small print" and to where it was posted, and with what degree of clarity. *Martino*, 269 F. Supp. 2d at 450. Alternatively, a shipper may

8

be charged with constructive notice of the terms of a tariff when the shipping contract "was negotiated between people of at least equal economic stature and commercial awareness or acuity." *Mech. Tech., Inc.*, 776 F.2d at 1088; *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 3 F. Supp. 3d 171, 191 (S.D.N.Y. 2014).

FedEx attaches a copy of the Ground Tariff as Exhibit A to their motion.  *See* Stewart Decl., Ex. A.  The company tells us that the Ground Tariff is "publicly available online," FedEx Mem. 20, and that it was "effective January 7, 2019, and updated October 1, 2019," Stewart Decl. ¶ 11.  They do not, however, explain where on their website the Tariff is posted, how many screens or layers a user of the site would need to click through to get there, or other relevant information.  *See Berger*, 2024 WL 4107243, at *4 (declining to "rely on the undated screenshots of the defendants' website" to determine whether plaintiffs had reasonable notice of the contract of carriage).[4]

---

[4] FedEx similarly fails to indicate whether the plaintiffs had "a reasonable opportunity to choose between two rates and levels of liability." *Chartis Seguros Mexico*, 3 F. Supp. 3d at 190 (declining, on that basis, to award summary judgment based on carrier's limitation of liability under Carmack Amendment); *see also Emerson Elec. Supply Co. v. Estes Express Lines Corp.*, 451 F.3d 179, 186-87 (3d Cir. 2006) ("[A] carrier must continue to offer two or more rates with corresponding levels of liability in order to successfully limit its liability pursuant to the Carmack Amendment.").

The Ground Tariff therefore cannot serve as a basis for dismissal at this stage, and the motion to dismiss Claim I is denied.

## B. Conversion, Trespass, and "Tortious Interference with Personal Property"

The complaint's "Count II" is styled as a claim for "Conversion, Trespass, and Tortious Interference with Personal Property." Oren and RDK NY assert this count against the Municipal Defendants. TAC ¶¶ 53-63. This framing does not, however, map well onto New York law: conversion and trespass to chattels are in fact separate causes of action with distinct elements, which should have been stated in separate counts. *See generally* Fed. R. Civ. P. 10(b). We take these claims up in turn below. "Tortious interference with personal property" is not a New York cause of action at all.[5]

### 1.   The Conversion Claim Will Proceed

Under New York law, "conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d

---

[5] The Municipal Defendants argue, and the plaintiffs do not dispute, that tortious interference with personal property is not a recognized cause of action in New York. Mem. of L. in Supp. of City Defs.' Mot. to Dismiss 17 n.3 ("City Mem."). New York courts have recognized claims for tortious interference with *contractual relationships* and with *prospective economic advantage*. But plaintiffs cite no authority — and the Court has located none — for this cause of action. This aspect of the claim is therefore dismissed.

Cir. 2007).  "Two key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006).

In moving to dismiss, the Municipal Defendants argue primarily that Oren and RDK "could not be in lawful possession of 106 pounds of marijuana" and that "it was reasonable for Officers Ganshaw and Greenidge to seize what was believed to be marijuana."  Mem. of L. in Supp. of City Defs.' Mot. to Dismiss ("City Mem.") 18, ECF No. 69-1.  But there is no mental state requirement for a New York conversion claim; "a party may be liable for conversion even if it acted in good faith."  *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 133 (2d Cir. 2022) (citing New York cases).  And in any event, the complaint pleads that the officers were on notice that the packages at issue contained legal hemp products, not marijuana.[6] *See, e.g.*, TAC ¶¶ 26-27, 29-32, 37, 59.

The Municipal Defendants' second argument for dismissal is that the seizure of the property was made incident

---

[6] Federal and New York state law have, at various times, criminalized certain parts of, and products derived from, the hemp plant, including substances not colloquially referred to as marijuana (such as CBD).  *See* 21 U.S.C.A. § 802(16) (West 2017) (amended October 24, 2018) (federal marijuana definition); N.Y. Pub. Health Law § 3302(21) (McKinney 2017) (amended March 8, 2020) (New York definition).  The relevance of this legal landscape (if any), which was in flux at the time that the shipments at issue were made, is for a later stage of this litigation.

to a lawful arrest, and thus not an "unauthorized" conversion.
*Thyroff*, 460 F.3d at 403.  This argument hangs on the Municipal
Defendants' contention that the officers had probable cause to
arrest Ronen Levy.  The Municipal Defendants are correct that no
conversion occurs when property is seized incident to an arrest
supported by probable cause.  *Chunn v. Amtrak*, 916 F.3d 204, 208
(2d Cir. 2019).  Probable cause is also a defense to many of
Ronen's claims, as discussed below.[7]

> a.   The Court Declines to Take Judicial Notice
>      of the Field Test

In arguing that probable cause existed to arrest Ronen
Levy, the Municipal Defendants rely heavily on the results of a
field test that, they assert, indicated that the substance in
the packages was marijuana.  City Mem. 5.  But this test is not
mentioned in or appended to the complaint, and the Court
declines to take judicial notice of it.

"Under Federal Rule of Evidence 201, a court may
judicially notice a fact that is not subject to reasonable
dispute."  *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir.
2021).  "Such facts must either be (1) generally known within

---

[7] Probable cause is a complete defense to false arrest and false
imprisonment, *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994);
*accord Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014); *Jaegly v. Couch*,
439 F.3d 149, 152 (2d Cir. 2006), and to malicious prosecution, *Savino v.
City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).  Similarly, probable cause
supporting arrest allows for lawful search incident to arrest, which would
negate Ronen's search and seizure claims.  *See generally*, *Arizona v. Gant*,
556 U.S. 332 (2009).

the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.* "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998).

While district courts occasionally take judicial notice of investigative documents like arrest reports, they more often decline to do so. *See, e.g.*, *Bey v. Antoine*, No. 19-CV-1877, 2021 WL 3725985, at *7 (E.D.N.Y. Aug. 23, 2021) (collecting cases). The Municipal Defendants have cited no case in which a field test was judicially noticed on a motion to dismiss, and this case will not be the first. For starters, the Municipal Defendants have not established that the report (or its contents) are "generally known" in any given jurisdiction, *see* F.R.E. 201; indeed, there is no indication that it is a public record at all. In *Moore v. Newton*, the district court declined to judicially notice an N.Y.P.D. field test similar to the test at issue here, because the defendants had not explained "how the source of these documents is unimpeachable." No. 14-CV-6473, 2016 WL 11445696, at *7 (E.D.N.Y. Sept. 7, 2016),

*report and recommendation adopted in part, rejected in part on other grounds,* 220 F. Supp. 3d 275 (E.D.N.Y. 2016) (collecting cases).  Likewise, the Municipal defendants here have not asserted — let alone established — that the field test's accuracy "cannot reasonably be questioned."  F.R.E. 201.[8]

This question may be largely academic: even if the Court were to take judicial notice of the field test, we would acknowledge only the fact of the report, not the accuracy of its results or the reasonableness of relying on them.  For all these reasons, the field test result is not properly considered on this motion.

> b. The Municipal Defendants Have Not Established Probable Cause to Arrest Ronen

Without the field test, the Municipal Defendants have identified no basis to infer probable cause.  "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Mastromonaco v. Cnty. of Westchester*,

---

[8] The report indicates that the field test was conducted via a "Duquenois – Levine Reagent" test. City Mem. Ex. A, ECF No. 69-3.  This method has not received universal acclaim: among other things, the Wisconsin Supreme Court held that it is insufficiently specific to establish that a given substance is cannabis. *State v. Wind*, 60 Wis. 2d 267, 272 (Wis. 1973); *see also* J.I. Thornton & G.R. Nakamura, *The Identification of Marijuana*, 12 J. of the Forensic Science Society 3, 461 (1972) (acknowledging false positives).

779 F. App'x 49, 50 (2d Cir. 2019).  "A defendant bears the burden of raising and proving the existence of probable cause for a plaintiff's arrest." *McLennon v. City of New York*, 171 F. Supp. 3d 69, 87-88 (E.D.N.Y. 2016); *Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).  In addition to the field test, the Municipal Defendants see probable cause emanating from certain allegations in the complaint: (1) the FedEx driver's "report to the Municipal Defendants that the shipment contained marijuana," *see* TAC ¶ 29; (2) the "leafy" appearance of the substance, which "resemble[ed] marijuana — an appearance the Municipal Defendants claim to see in the photograph at paragraph 38 of the complaint; and (3) the fact that Ronen arrived at the precinct to pick up the package, TAC ¶ 33.  City Mem. 4-6.

These allegations are not sufficient.  The FedEx driver reported nothing to the N.Y.P.D. that they could not observe for themselves.  TAC ¶¶ 29-30.  And the complaint's photograph of the hemp / marijuana bags is taken from many feet away; nothing about the contents' appearance — leafy or otherwise — is apparent in the picture.  Beyond that, the complaint includes allegations that tend to undermine probable cause.  It alleges, for example, that the Municipal Defendants observed shipping documents that "clearly identified that the shipment only contain[ed] [] legal hemp product."  *Id.* ¶ 30. Further, the complaint alleges that the Vermont Police

Department readily determined that the package contained only legal hemp. *Id.* ¶ 26; *see Mastromonaco*, 779 F. App'x at 50 (asking whether the officers asserting probable cause exercised "reasonable caution").

Courts regularly decline to make probable cause findings at the motion to dismiss stage, especially in the face of incomplete or conflicting allegations. *See, e.g. Jurkowitsch v. City of New York*, No. 14-CV-6810, 2015 WL 8489964, at *5 (E.D.N.Y. Dec. 9, 2015), *aff'd sub nom. Jurkowitsch v. Choudhury*, 673 F. App'x 44 (2d Cir. 2016) (collecting cases). Here, as discussed further below, *infra* Section IV.E, the complaint does not establish probable cause to arrest Ronen; thus, the conversion claim will proceed.

2. The Trespass Claim Will Proceed

To assert a claim for trespass to chattels under New York law, plaintiffs must allege that "(1) defendants acted with intent, (2) to physically interfere with (3) plaintiff['s] lawful possession, and (4) harm resulted." *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 368 (S.D.N.Y. 2009), *aff'd*, 379 F. App'x 4 (2d Cir. 2010). The Municipal Defendants marshal the same arguments for dismissal of this claim as the conversion claim; namely, that the plaintiffs have not shown lawful possession over the packages, and that seizure incident to Ronen's arrest was warranted. City Mem. 4-6. These arguments

16

depend (again) on the existence of probable cause, and thus do not prevail at this stage.

The TAC adequately alleges each element of the trespass claim, including that the Municipal Defendants acted with intent, TAC ¶ 59; that they seized and refused to release the packages, *id.* ¶ 58; that Oren and RDK had lawful possession of the packages, *id.* ¶ 55-56, 61; and that harm resulted, as the contents of the packages spoiled in police custody, *id.* ¶ 62. The motion to dismiss the trespass cause of action is therefore denied.

### C. Negligence

Oren and RDK also bring a claim for "general negligence" against the Municipal Defendants. (Presumably they refer to this claim as such to distinguish it from their negligent hiring claim.) Under New York law, to state a claim for negligence, a plaintiff must establish: "1) the existence of a duty flowing from defendant to plaintiff; 2) a breach of this duty; 3) a reasonably close causal connection between the contact and the resulting injury; and 4) actual loss, harm or damage." *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 79 (2d Cir. 1997). The complaint alleges that the Municipal Defendants "were negligent, reckless and careless" in taking a number of actions, including in confiscating and withholding the packages,

which they "knew or should have known were legal hemp products."
TAC ¶ 65.  This claim suffers from a number of flaws.

Most prominently, there is no cause of action for
negligence, generally speaking, against police officers in these
circumstances.  "Under New York law, a plaintiff may not recover
under general negligence principles for a claim that law
enforcement officers failed to exercise the appropriate degree
of care in effecting an arrest or initiating a prosecution."
*Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (cited
by *Watson v. United States*, 865 F.3d 123, 127 (2d Cir. 2017));
*see also Prezioso v. Cnty. of Niagara*, 213 A.D.3d 1302, 1306
(4th Dep't 2023) ("A cause of action for negligent investigation
is not recognized in New York."); *Gewirtz v. City of New York*,
196 N.Y.S. 3d 683, 688 (N.Y. Sup. Ct. 2023) ("[I]n general, no
cognizable cause of action exists for negligent police
investigation.").  Therefore, to the extent that the negligence
claims are predicated on the Municipal Defendants' investigation
of the packages, a negligence claim cannot stand.

Plaintiffs also allege no particular duty owed to
them.  "The existence of a duty is the *sine qua non* of a
negligence claim: In the absence of a duty, as a matter of law,
no liability can ensue."  *Alfaro v. Wal-Mart Stores, Inc.*, 210
F.3d 111, 114 (2d Cir. 2000).  In their opposition, the
plaintiffs argue that the officers had a "duty not to illegally

18

seize their lawful products," RDK Pls.' Mem. in Opp'n to Mot. to Dismiss ("RDK Mem.") 2, ECF No. 71, or "a duty not to tortiously interfere with their property." *Id.* at 10. But they provide no authority that these duties exist or, more importantly, are actionable.[9]

Finally, seizure and tortuous interference are intentional acts, and therefore not actionable on a negligence theory. In their second claim, Oren and RDK specifically allege that the Municipal Defendants acted with intent. *See* TAC ¶ 59. Under New York law, harm that is predicated on intentional conduct cannot give rise to a negligence claim. *See United Nat. Ins. Co. v. Tunnel, Inc.*, 988 F.2d 351, 353 (2d Cir. 1993) (recognizing the "mutual exclusivity" of negligent and intentional conduct); *Schmidt v. Bishop*, 779 F. Supp. 321, 324 (S.D.N.Y. 1991) ("New York courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."); *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 531-32 (S.D.N.Y. 2000) (finding under New York law that, "because

---

[9] To the extent that the negligence claims are predicated on the City's *lack* of action or failure to act in a certain way, the plaintiffs would need to identify a "special" duty, beyond the general duty owed to all citizens: they must allege "that the City owed [them] a special duty of care as 'an essential element' of [their] negligence claims." *Howell v. City of New York*, 39 N.Y.3d 1006, 1008 (N.Y. 2022); *see also Gewirtz v. City of New York*, 196 N.Y.S.3d 683, 688 (N.Y. Sup. Ct. 2023).

the actions alleged here were intentional and deliberate . . .
they are outside the ambit of actionable negligence").

    For all these reasons, Oren and RDK's "general
negligence" claims are dismissed.

### D. Negligent Hiring and Retention

    Oren and RDK's final claim is for negligent hiring and
retention, against the Municipal Defendants.[10]  They assert that
the City did not exercise reasonable care and diligence in
hiring and supervising Greenidge and Ganshaw.  TAC ¶ 70.  To
bring a negligent hiring and retention claim, a plaintiff must
allege:

> (1) that the tort-feasor and the defendant were in an
> employee-employer relationship; (2) that the employer
> knew or should have known of the employee's propensity
> for the conduct which caused the injury prior to the
> injury's occurrence; and (3) that the tort was
> committed on the employer's premises or with the
> employer's chattels.

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).
However, "where an employee is acting within the scope of his or
her employment, the employer is liable under the theory of
*respondeat superior*, and the plaintiff may not proceed with a
claim to recover damages for negligent hiring, retention,

---

[10] This claim is brought against the City as well as Officers Greenidge
and Ganshaw.  However, the allegations connected to the claim itself refer
only to the City, and indeed it logically makes little sense to hold the
individual defendants liable for their own hiring and retention.  For this
reason, as well as those articulated in this section, the claim is dismissed
as to the individual defendants.

supervision, or training." *Ambroise v. United Parcel Serv. of Am.*, 143 A.D.3d 929, 931 (2d Dep't 2016) (collecting cases); *see also Eckardt v. City of White Plains*, 87 A.D.3d 1049, 1051 (2d Dep't 2011) (dismissing negligent hiring and supervision claim based on false arrest and detention, as "these actions were performed by the officers in the scope of their employment with the City").

Oren and RDK alleged in the complaint that officers Ganshaw and Greenidge were "acting within the scope of their employment for the City of New York" at all relevant times.  TAC ¶ 66; *see also id.* ¶ 33.  And they do not dispute the defendants' asserted basis for dismissal; instead, they "take no position" on whether the motion should be granted on this claim.  *See* RDK Mem. 11.  Therefore, the negligent hiring and retention claim is dismissed.

## IV.  Claims Brought by Ronen Levy

Ronen Levy brings several claims, separately from those brought by Oren and RDK.[11]  The defendants move to dismiss these claims as well.  This order first addresses a number of

---

[11] Ronen's claims include: 49 U.S.C. § 1983 False Arrest; State Law False Arrest; 49 U.S.C. § 1983 Unlawful Search and Seizure; State Law Unlawful Search and Seizure; 49 U.S.C. § 1983 False Imprisonment; State Law False Imprisonment; 49 U.S.C. § 1983 Failure to Intervene; 49 U.S.C. § 1983 Malicious Prosecution' State Law Malicious Prosecution; Custom, Policy, and Monell Liability; State Law Negligence; and State Law Intentional Infliction of Emotional Distress.

overarching issues that impact more than one of his claims,
before addressing the claims that remain individually.

**A.   Ronen's Claims are Not Preempted by the Carmack Amendment**

In their motion to dismiss, FedEx first argues that
all of Ronen's claims against them are preempted by the Carmack
Amendment.

1.   <u>Legal Standard: Carmack Preemption</u>

"Congress has the power to preempt state law" under
the Supremacy Clause of the Constitution.  *Arizona v. United
States*, 567 U.S. 387, 399 (2012).  "The key to the preemption
inquiry is the intent of Congress."  *New York SMSA Ltd. P'ship
v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010).
Therefore, "we are to begin as we do in any exercise of
statutory construction," with "the provision in question."  *In
re WTC Disaster Site*, 414 F.3d 352, 371 (2d Cir. 2005).

The Carmack Amendment "superseded diverse state laws
with a nationally uniform policy governing interstate carriers'
liability for property loss."  *New York, N. H. & Hartford R. Co.
v. Nothnagle*, 346 U.S. 128, 131 (1953).  It established a
federal remedy for "actual loss or injury to [] property"
provided to carriers for interstate shipment.  49 U.S.C.
§ 14706.  "Almost every detail of the subject is covered so
completely that there can be no rational doubt but that Congress
intended to take possession of the subject, and supersede all

state regulation with reference to it." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913).

Thus, Carmack preemption is broad.  The Second Circuit has held that "the Carmack Amendment preempts state common law remedies that might be asserted against a carrier for damages to goods shipped under a proper bill of lading." *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 378 (2d Cir. 1994); *see also Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001) ("The Carmack Amendment . . . preempt[s] the shipper's state and common law claims against a carrier for loss or damage to goods during shipment.").  This Court noted, in denying remand, that Carmack preemption "embrac[es] all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination."  Mem & Order at 9, ECF No. 41.  This can include damages for "misdelivery" and for "refusal to deliver," among other things.  *Id.* at 8.

In conducting the Carmack preemption analysis, courts typically look to the *conduct* about which a plaintiff complains, in addition to the nature of the loss.  In *Smith v. United Parcel Service*, after the plaintiffs directed "harsh words" at a UPS driver and called her an "unflattering and derogatory name," their packages began failing to materialize.  296 F.3d 1244, 1245 (11th Cir. 2002).  The plaintiffs brought a number of common-law claims, including for fraud (because UPS "accept[ed]

23

shipments for delivery," "knowing that they had no intention of fulfilling" those deliveries).  They also asserted a claim for "outrage" — apparently the Alabama analogue to an emotional-distress claim.  *Id.* at 1246.

The Eleventh Circuit looked to what UPS was alleged to have *done* — namely, "failing and refusing to make deliveries."  Because the fraud claim was based "on UPS's failure to provide [the plaintiffs] with particular transportation and delivery services" — conduct at the heart of the contract of carriage — it fell "squarely within the preemption coverage of the Carmack Amendment."  *Id.* at 1247. And the "outrage" claim was preempted "because it too is based on the same conduct."  *Id.* at 1248.

In looking at the conduct alleged, Carmack cases focus on the relationship between that conduct and the contract of carriage between the shipper and customer.  The Seventh Circuit has held, for example, that the Carmack Amendment "preempts all state law claims *based upon the contract of carriage*, in which the harm arises out of the loss of or damage to goods."  *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 284 (7th Cir. 1997) (emphasis added).  Still, that court noted, "claims involving a separate and independently actionable harm to the shipper distinct from such damage are not preempted."  *Id.*

Applying these rules, the *Gordon* panel held that the Carmack Amendment preempted fraud and breach of contract claims. The common-law fraud claim was a "close call," but in the end the court concluded that "claims relating to the making of the contract for carriage" — like the fraud claim — "are so closely related to the performance of the contract, and the measure of damages for such claims so likely to be the loss or damage to the goods, that they are also preempted by the Carmack Amendment." *Id.* at 289.  At the same time, the court held that Amendment did not preempt the Gordons' claim for intentional infliction of emotional distress, because it was "independent from the loss or damage to goods." *Id.* (citing *Rini v. United Van Lines*, 104 F.3d 502, 506 (1st Cir. 1997)).

2.   Application to Ronen's Claims

According to FedEx, the Carmack Amendment preempts each of Ronen's claims because they arise from FedEx's alleged misdelivery of the packages at issue to the New York Police Department, rather than to Ronen.  FedEx Mem. 5.[12]

But despite the broad sweep of the Carmack Amendment, Ronen's claims are not preempted.  To begin with, the claims' connection to the contract of carriage is attenuated: that

---

[12] FedEx argues simply that Ronen's "claims" are preempted by the Carmack Amendment, without specifying which claims.  FedEx Mem. 4-8.  This argument is "untenable" as to Ronen's federal-law claims, for example, and perhaps to others.  *Cleveland*, 30 F.3d at 377-78.

document may tell shippers that FedEx will not accept hemp
products for shipment, but no party has indicated that the
contract speaks to communications with law enforcement (one way
or another).  And Ronen is not FedEx's customer; it was his
brother (and his brother's company) that made the purchase that
led to the shipment.  TAC ¶¶ 22-23.  Ronen is therefore a
sizeable step removed from the shipper, relative to the usual
plaintiff in a Carmack analysis.

In that regard, this case bears some similarities to
*Koch v. McConnell Transp. Ltd*., No. 13-CV-3016, 2015 WL 3470182,
at *6 (E.D.N.Y. May 29, 2015).  There, a Home Depot employee
climbed onto a truck operated by McConnell Transport to assist
in unloading Christmas trees that Home Depot would be selling.
The employee slipped on ice in the truck's trailer, hit his head
on the pavement, and died.  Given how far removed this employee
was from the shipping arrangement with McConnell (among other
things), his claims were not preempted.

By its text, the Carmack Amendment applies to "the
actual loss or injury *to the property*."  49 U.S.C. § 14706(a)(1)
(emphasis added); *see also Cleveland*, 30 F.3d at 377 (Carmack
Amendment applies to damage to goods and loss or injury to
property).[13]  Ronen is not complaining of any injury to property;

---

[13] As the Supreme Court has written, "the Carmack Amendment deals only
with the shipment of property.  Its language is so clear as to leave no

instead, he seeks recompense for time spent in jail.  Indeed, unlike his brother Oren, Ronen claims no possessory interest in the hemp products at all.  His claims are thus not preempted.

**B.    Ronen's Claims are Not Preempted by the FAAAA**

FedEx argues next that Ronen's claims are each preempted by the Federal Aviation Administration Authorization Act ("FAAAA").  The FAAAA preempts state law causes of action "related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C. § 14501(c)(1).  Again, FedEx's argument is premised on the theory that Ronen's claims arise from FedEx's depositing of the packages with the New York Police Department, rather than delivering them to Ronen, and thus his "causes of action implicate the sole service that FedEx provides: transporting and delivering packages."  FedEx Mem. 12.  However, as discussed above, Ronen's claims each sound primarily in personal injury and deprivation of liberty, not misdelivery of a package.  *See supra* Section IV.A.  As such, they are not "related to a [carrier's] price, route, or service."  49 U.S.C. § 14501(c)(1).[14]

---

ground for the contention that Congress intended to deal with the transportation of persons."  *Chicago, R.I. & P. Ry. Co. v. Maucher*, 248 U.S. 359, 363 (1919).

[14] By contrast, the cases that FedEx cites involve claims that implicate actual transportation and delivery procedures.  *See, e.g.*, *Trujillo v. American Airlines, Inc.*, 938 F. Supp. 392 (N.D. Tex. 1995), *aff'd*, 98 F.3d

"[T]he relevant inquiry is whether enforcement of the plaintiff's claims would impose some obligation on [the defendant] with respect to conduct that, when properly undertaken, is a service." *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 454 (1st Cir. 2014).  The conduct most relevant to Ronen's claims is not, as FedEx suggests, the discretion to deliver a certain kind of product.  Rather, it is the alleged making of a police report and fabrication of evidence.  *See, e.g.*, TAC ¶¶ 74, 80, 122, 130.  Therefore, the motion to dismiss Ronen's claims as preempted by the FAAAA is denied.

## C.   Ronen's Section 1983 Claims Against FedEx Fail to Plead State Action

Ronen brings a number of claims under Section 1983 against all defendants.  These include claims for false arrest, "unlawful search and seizure," false imprisonment, and malicious prosecution.  In order to maintain a Section 1983 action, a plaintiff must show that the defendant (a) acted under color of state law (b) to deprive the plaintiff of a right arising under the Constitution or federal law.  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  FedEx argues that the Section 1983 claims

---

1338 (5th Cir. 1996) (claims for negligence and consumer protection based on airline's loss of a package were preempted); *Aretakis v. Fed. Express Corp.*, No. 10-CV-1696, 2011 WL 1226278 (S.D.N.Y. Feb. 28, 2011) (claims for negligence, breach of contract, and violation N.Y. Business Law based on late delivery of a package were preempted); *Rockwell v. United Parcel Serv., Inc.*, No. 2:99 CV 57, 1999 WL 33100089 (D. Vt. July 7, 1999) (claims regarding deficiencies in UPS package intake and delivery protocol, which led to delivery of a pipe bomb, preempted).

must fail as to FedEx, because Ronen does not adequately allege that they were acting under color of law. *See Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013). "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may fairly be treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2002).

The primary action that FedEx is alleged to have taken with respect to Ronen's claims is falsely reporting to the New York Police Department that the package at issue contained marijuana. TAC ¶ 32. However, the "mere identification of a potential culprit" or the "mere furnishing of information to the police" does not establish state action. *King v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997). Therefore, the report alone cannot suffice.

Ronen claims that FedEx and the Municipal Defendants "conspired together" to deprive him of his constitutional rights. *See, e.g.*, TAC ¶¶ 32, 74, 80, 97. This, too, is not enough, as a "merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against a private entity." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Instead, "[t]o state a claim against a private entity on a section 1983 conspiracy

29

theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). No such facts are alleged here. Therefore, the Section 1983 claims are dismissed as to FedEx.

**D.   Ronen's Section 1983 Claims Against the City Fail to Satisfy *Monell***

Municipalities do not have *respondeat superior* liability for the constitutional violations of their agents. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691-94 (1978). Instead, "to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

A failure to train or supervise can amount to a "policy or custom" for *Monell* purposes only when the failure reflects "deliberate indifference to the rights of others." *Wray v. City of New York*, 490 F.3d 189, 195-96 (2d Cir. 2007). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). *Monell* liability for failure to train

30

therefore attaches only when: (1) the policy maker knows "to a moral certainty" that City employees will confront a given situation; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation;" and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). This showing, in turn, generally requires identification of a specific deficiency in the municipality's training program, *see Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007), or a pattern of similar constitutional violations. *See Connick*, 563 U.S. at 62.

Ronen claims that the "City has permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal false arrests, false imprisonments, excessive uses of force, malicious prosecutions, abuses of process, and procedural and substantive due process violations." TAC ¶ 111. However, "[t]he mere invocation of the 'pattern' or 'plan' will not suffice without [a] causal link" connecting the pattern to the alleged misconduct. *Batista*, 702 F.2d. at 387.

The complaint attempts to identify ostensibly similar constitutional violations by other officers. TAC ¶¶ 113-17. But the episodes Ronen marshals bear little similarity to this

case.  He identifies instances in which N.Y.P.P. officers were convicted of "corruption-related crimes," murder, lying under oath, and sexual assault.  TAC ¶ 117.  Such conduct "could not have put [the City] on notice that specific training was necessary to avoid *this* constitutional violation."  *Connick*, 563 U.S. at 63 (emphasis added) (different types of *Brady* violations were insufficiently similar to establish a pattern under *Monell*).  As the quoted language indicates, the case law requires a tight fit between the alleged "pattern" evidence and the facts of the instant case.

So, in *Greene v. City of New York*, the Second Circuit held that the plaintiff had not adequately alleged a district attorney's office's failure to train employees about the obligation to disclose exculpatory and other relevant evidence. 742 F. App'x 532, 536–37 (2d Cir. 2018).  The complaint listed thirty-six court decisions identifying non-disclosure violations, but only two of those pre-dated the *Greene* plaintiffs' allegations.  And those two allegations were "inapposite because they do not concern the nondisclosure of the same sort of evidence at issue in *this* case."  *Id.* at 537. Here, the alleged pattern is even further removed from the violations at issue.

Ronen also asserts, in conclusory fashion, that the City "was aware that the Defendants were unfit officers," *id.*

¶ 114, and that the City "exercised deliberate indifference by failing to take remedial action" and by insufficiently training and supervising the individual defendants, *id.* ¶ 115.  But "general and conclusory allegations" such as these do not suffice to establish *Monell* liability, even at the motion to dismiss stage.  *Schnauder v. Gibens*, 679 F. App'x 8, 10 (2d Cir. 2017) (summary order); *see also Vasquez v. City of New York*, No. 20-CV-4641, 2023 WL 8551715, at *4-*5 (S.D.N.Y. Dec. 11, 2023) ("[C]ourts dealing with *Monell* claims have disregarded the use of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct.") (collecting cases).

There is also no indication that the City failed to take remedial action against the officers mentioned.  Therefore, the complaint fails to allege *Monell* liability against the City of New York.  All claims brought against the City under Section 1983 are therefore dismissed.[15]

## E.  The Individual Officers Are Not Entitled to Qualified Immunity at this Stage

"[A] police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established

---

[15] Ronen pleads *Monell* liability as a separate cause of action. However, *Monell* created a method for holding municipal defendants liable, rather than establishing an independent cause of action.  *See generally Monell*, 436 U.S. 658.  Claim XIV is therefore dismissed, along with the Section 1983 claims against the City.

statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).  At this stage, the burden rests with the defendants to "show that, construing all reasonable inferences in the plaintiff's favor, the facts supporting the immunity defense appear on the face of the complaint," and "the plaintiff can prove no set of facts . . . that would entitle him to relief." *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017).  The Second Circuit has described this as "a formidable hurdle." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004).

Officers Greenidge and Ganshaw argue that they cannot be held liable for the Section 1983 claims because it was objectively reasonable for them to arrest and charge Ronen. City Mem. 12-13.  As established in Section III.B.1(b), above, the officers cannot establish probable cause to arrest Ronen on the instant record.  Even without that finding, however, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  Arguable probable cause may be found "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers

of reasonable competence could disagree on whether the probable cause test was met." *Id.*

The officers look to the same operative facts to establish "arguable" probable cause as they did to establish actual cause. These are (1) the field test that indicated the packages were positive for marijuana; (2) the fact that "the packages resembled marijuana," which the officers assert is evident from the photo in the complaint (at ¶ 38); and (3) the report from the FedEx driver that the package contained marijuana. City Mem. 12-13. As noted above, the field test is not cognizable on a motion to dismiss. *See supra* Section III.B.1(a). Second, nothing on the face of the complaint indicates that the contents of the packages resembled marijuana. The photograph is taken from a distance and reveals the shape of the packages but nothing about their contents.

This leaves the Municipal Defendants only with the tip from the FedEx driver at this stage. And the tip is insufficient, standing alone, even to establish that probable cause was "arguable." In assessing the value of an informant's tip, courts look to the "totality-of-the-circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). Generally speaking, "the informant's 'basis of knowledge' and 'veracity' (*i.e.*, how he knows and why we should believe him) remain highly relevant to a determination of either probable cause or

reasonable suspicion*." United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007).

But nothing in the complaint reveals that the FedEx driver had a unique or special basis to conclude that the packages contained marijuana.  Thus, whatever initial value the tip had, that value dropped from the equation as soon as the driver turned the packages over to the police.  At that point, the officers had access to exactly the same information as the FedEx driver.  The circumstances of this case are, in this way, similar to those in *Borisova v. Friberg*, No. 18-CV-7440, 2023 WL 5045090 (E.D.N.Y. Aug. 8, 2023).  In *Borisova*, the district court found that the value of an informant's tip about counterfeit goods "dissipated" when the officers were able to view these goods for themselves.  *Id.* (denying qualified immunity).

Officers Greenidge and Ganshaw may have additional light to shed in depositions or at trial.  At this stage, however, they cannot establish arguable probable cause.[16]  The motion to dismiss Ronen's claims as to the individual defendants on qualified immunity grounds is therefore denied.

---

[16] The utility of the driver's tip was even more remote by the time of the probable cause assessment for malicious prosecution.  "[P]robable cause for malicious prosecution is assessed in light of facts known or reasonably believed at the time the prosecution was initiated, and not at the time of arrest." *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 169 (E.D.N.Y. 2010).

## F.   False Arrest and False Imprisonment

        "[F]alse arrest is a species of false imprisonment."
*Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995).
The false arrest and false imprisonment claims thus share the
same elements.  *Id.*  "Under New York law, the elements of a
false imprisonment claim are: (1) the defendant intended to
confine the plaintiff, (2) the plaintiff was conscious of the
confinement, (3) the plaintiff did not consent to the
confinement and (4) the confinement was not otherwise
privileged."  *Id.*  "The elements of a claim of false arrest
under § 1983 are substantially the same as the elements of a
false arrest claim under New York law."  *Hygh v. Jacobs*, 961
F.2d 359, 366 (2d Cir. 1992).  Therefore, the merits of these
claims are examined together.

### 1.   The False Arrest and Imprisonment Claims May Proceed Against the Municipal Defendants

        All three Municipal Defendants move to dismiss Ronen's
false arrest and false imprisonment claims on the (sole) basis
that probable cause existed to arrest him.  City Mem. 4-6.
Because neither probable cause nor arguable probable cause can
be found at this stage, *see* Sections Section III.B.1(b) and
IV.E, above, this argument fails.  The *Monell* analysis above,
moreover, applies only to claims brought under Section 1983.
Under New York common law, municipalities may be held liable for

the torts of their officers, including false arrest and imprisonment, under the doctrine of *respondeat superior*. *See Ackerson v. City of White Plains*, 702 F.3d 15, 22 (2d Cir. 2012). Therefore, the Municipal Defendants' motions to dismiss the state-law false arrest and imprisonment claims are denied.

### 2. The False Arrest and False Imprisonment Claims Against FedEx are Dismissed

FedEx moves to dismiss the false arrest and imprisonment claims on the basis that the complaint fails to plead that FedEx arrested or otherwise confined Ronen. FedEx Mem. 15 n.2. These motions are granted.

The only allegations in the complaint connecting FedEx to Ronen's arrest and imprisonment involve the report of the package to the police. TAC ¶ 29. This is not, of course, itself an act of arrest or confinement. The complaint also alleges, in conclusory fashion, that the FedEx driver and the Municipal Defendants "conspired together" to arrest and confine Ronen. *Id.* ¶¶ 74-75. But "under New York law, in order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 900 (2013). "A bare conclusory allegation of conspiracy is usually held

insufficient."  *Id.* at 901 (dismissing false arrest claim based on conspiracy).  Here, because the complaint has not established that FedEx arrested or confined Ronen, and has not alleged any facts indicating a conspiracy, the false arrest and false imprisonment claims against FedEx are dismissed.

**G.   Unlawful Search and Seizure**

Ronen also brings claims for "unlawful search and seizure" — purportedly under both Section 1983 and New York state law.  These claims are addressed in turn.

1.   Section 1983 / Fourth Amendment

An allegation of illegal search and / or seizure is actionable under Section 1983.  *See Townes v. City of New York*, 176 F.3d 138 (2d Cir. 1999) (evaluating claim that defendant was "subjected to an unconstitutional search and seizure" in violation of Section 1983).  Such claims may relate to the search and seizure of either person, *id.*, or property, *United States v. Ganias*, 755 F.3d 125 (2d Cir. 2014), *on reh'g en banc,* 824 F.3d 199 (2d Cir. 2016).  "Two categories of seizure of the person implicating the protection of the Fourth Amendment have emerged in the caselaw:" (1) an investigative detention, or *Terry* stop, and (2) an arrest.  *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991).

Ronen asserts virtually no specifics in support of this claim.  He avers that the defendants "conspired together

and unlawfully stopped and searched Plaintiff without cause, a
warrant, or consent."  TAC ¶ 80.  Beyond that single, conclusory
sentence, nothing: he does not explain where, when, or how he
was searched or what was seized.  He therefore pleads no facts
at all to suggest that he was subject to an investigative
detention, distinct from his arrest.[17]

     To the extent his "seizure" claim is premised on his
arrest, it is duplicative of his false arrest and imprisonment
claims.  "Two claims are duplicative of one another if they
arise from the same facts and do not allege distinct damages."
*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175
(2d Cir. 2008).  Thus, in *Jackson v. City of New York*, the court
concluded that claims for "illegal search and seizure of the
person, false arrest, unlawful detention, and false
imprisonment" were duplicative, and construed them as "one claim
for false arrest."  29 F. Supp. 3d 161, 169 n.8 (E.D.N.Y. 2014);
*see also Ivery v. Baldauf*, 284 F. Supp. 3d 426, 434 (W.D.N.Y.
2018) ("[T]he false-arrest and illegal-seizure claims are
properly asserted in a single count, inasmuch as they both arise
from the same rights guaranteed by the Fourth Amendment.").

     As for the "search" aspect, the complaint includes no
specific facts regarding a search of Ronen's person or

---

[17] The complaint states that Ronen "voluntarily arrived" at the police
precinct.  TAC ¶ 33.

possessions.  Presumably, he was searched incident to arrest;
but again, the lawfulness of such a search would rise or fall
with the lawfulness of the arrest itself.  Finally, to the
extent that Ronen complains about the search or seizure of the
hemp packages, that complaint would run headlong into his
disclaimer of any possessory interest therein.  *See* Am. Compl.
¶¶ 22-23 (identifying Oren Levy and RDK as the purchasers and
intended recipients of the packages).

Ronen's federal claims for "unlawful search and
seizure," false arrest, and false imprisonment — each brought
pursuant to Section 1983 — are therefore consolidated into a
single claim for false arrest.

2.  State-Law Search and Seizure Claim

There is no common-law claim for "illegal search and
seizure" in New York state.  *See, e.g.*, *Elio v. Putnam County*,
Index No. 00523/2024, 2024 WL 3611492, at *10 (N.Y. Sup. Ct.
July 30, 2024) ("Likewise, plaintiff's claims of coercion and
'unlawful search and seizure' must be dismissed because they are
not cognizable civil claims under New York law.").  The New York
courts can, however, construe this as a claim brought pursuant
to the New York State constitution.  *See Gordon v. Suffolk
Cnty.*, No. 21-CV-1653, 2022 WL 17585706, at *6 (E.D.N.Y. Dec. 9,
2022); *see also Allen v. Antal*, 665 Fed. App'x. 9, 13 (2d Cir.
2016) ("The New York State Constitution provides a private right

of action where remedies are otherwise unavailable at common law or under § 1983.").

That construction, however, provides limited recourse, as New York State constitutional claims will not lie where the alleged wrongs can be "redressed by an alternative remedy." *Gordon*, 2022 WL 17585706, at *6 (citing *Lyles v. State*, 2 A.D.3d 694, 695-96 (2d Dep't 2003)); *see also Alwan v. City of New York*, 311 F. Supp. 3d 570, 588 (E.D.N.Y. 2018) ("Under New York law, a state constitutional-tort claim will not lie when state tort law provides an alternative means of redress.").

Alternative remedies for an illegal search and seizure include Section 1983 and common-law tort claims for false arrest or imprisonment, which Ronen has alleged. *See Gordon*, 2022 WL 17585706, at *6; *Lyles*, 2 A.D.3d at 695-96. Accordingly, this claim is dismissed.

## H.   Failure to Intervene

Ronen next brings a claim against the individual municipal defendants for failing to intervene in his arrest and imprisonment. TAC ¶¶ 90-94. Because "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence," an officer may be liable for "preventable harm caused by the actions of the other officers where that officer observes" a constitutional

violation.  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).
An officer may only be held liable for failure to intervene when
"(1) the officer had a realistic opportunity to intervene and
prevent the harm; (2) a reasonable person in the officer's
position would know that the victim's constitutional rights were
being violated; and (3) the officer does not take reasonable
steps to intervene."  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d
501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v.
Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).

The Municipal Defendants argue that this claim must be
dismissed, as no underlying constitutional violation is alleged,
and because the officers were alleged to have direct involvement
in the incident at issue.  City Mem. 10-11.  They are correct
regarding the second point; it is inherent in a claim for
failure to intervene, as laid out above, that the relevant
action was taken by "other officers."  *Anderson*, 17 F.3d at 557.
The complaint includes no allegations that any constitutional
violations were committed by other officers in the presence of
the individual defendants.  Therefore, Ronen's failure to
intervene claim is dismissed.

I.  **Malicious Prosecution**

Ronen next brings claims under Section 1983 and New
York law for malicious prosecution, against all defendants.
Claims for malicious prosecution under both federal and New York

law must satisfy the following elements: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). A Section 1983 malicious prosecution claimant must additionally allege a post-arraignment deprivation of liberty sufficient to implicate the plaintiff's Fourth Amendment rights. *See Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

      1.    The Malicious Prosecution Claims are Insufficiently Pleaded as to the Municipal <u>Defendants</u>

The Municipal Defendants seek to dismiss the malicious prosecution claims on two bases. First, they argue that probable cause existed to prosecute Ronen, which is a complete defense to malicious prosecution. *Savino*, 331 F.3d at 72. However, as discussed above, no probable cause (or arguable probable cause) to arrest can be established at this juncture, and no facts that are reviewable on a motion to dismiss indicate that probable cause to prosecute developed thereafter. Second, the Municipal Defendants assert that the District Attorney's office, not the individual defendants or the City, initiated the prosecution. City Mem. 9-10. We take up this second basis here.

"[W]here [an] allegation of misconduct is directed at police, a malicious-prosecution claim cannot stand if the decision made by the prosecutor to bring criminal charges was independent of any pressure exerted by police." *Hartman v. Moore*, 547 U.S. 250, 263 (2006). "It is well settled that the chain of causation" between an officer's arrest and a subsequent prosecution "is broken by the intervening exercise of independent judgment" by the prosecutor "in the absence of evidence that the police officer misled or pressured" the prosecutor. *Townes*, 176 F.3d at 147.

Therefore, "an officer who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 449 (E.D.N.Y. 2015). At the same time, officers may be liable for malicious prosecution when they "failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith." *Id.* (quoting *Manganiello*, 612 F.3d 160).

Here, the complaint states that the officers engaged in wrongdoing by "drafting and signing sworn documents and police reports, fabricating testimony and evidence, suppressing and concealing exculpatory evidence, and forwarding and presenting false information to a court." TAC ¶ 106. Again,

45

however, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Loc. 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002); *see Toussaint v. Cnty. of Westchester*, 615 F. Supp. 3d 215, 227-28 (S.D.N.Y. 2022) ("Plaintiff offers no concrete allegations for his assertion that the Officer Defendants played any role in [the prosecutor]'s decision to prosecute."). The instant complaint identifies no actual example of fabricated evidence, exculpatory evidence withheld, or other "false information" provided to a prosecutor or court.

Similarly, the complaint does not reference any particular document or report that the officers allegedly signed or swore to. *See Bernstein v. City of New York*, No. 06-CV-895, 2007 WL 1573910, at *5-*6 (S.D.N.Y. May 24, 2007) (dismissing malicious prosecution claim based on conclusory allegation that officer prepared a "false accusatory instrument" and swore to the criminal complaint).[18] Therefore, Ronen has not plausibly pleaded that the officers initiated the proceeding against him.

---

[18] While the act of signing a felony complaint, coupled with specific factual allegations about an officer's active participation in the prosecution, can amount to initiation of prosecution, *Manganiello*, 612 F.3d at 163, neither of these components is plausibly alleged here. In fact, the complaint specifically identifies the Kings County District Attorney's Office as the entity that charged Ronen. Am. Compl. ¶ 35.

His allegation of actual malice — that the defendants "initiated the above-stated malicious prosecution to cover up their illegal and unconstitutional conduct," TAC ¶ 104 — is similarly supported by no factual allegations.  Given the omission to plausibly allege the first and fourth element of a malicious prosecution claim, this claim is dismissed as to the Municipal Defendants.

2.  The Malicious Prosecution Claims are Dismissed as to FedEx

As with the claims for false arrest and imprisonment, the only allegations connecting FedEx to the malicious prosecution claims are the general allegation that FedEx wrongfully reported the packages, TAC ¶ 29, and the conclusory allegation that the FedEx driver "conspired with the Municipal Defendants," *id.* ¶ 97.  But the mere act of reporting suspected evidence cannot amount to malicious prosecution under state law, either.  *See, e.g.*, *Du Chateau v. Metro-N. Commuter R. Co.*, 253 A.D.2d 128, 130-31 (1st Dep't 1999) ("[A] civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities . . . will not be held liable for false arrest or malicious prosecution."); *Present v. Avon Prods., Inc.*, 253 A.D.2d 183, 189-90 (1st Dep't 1999) (reporting matter to police and responding to inquiries did not suffice to

state malicious prosecution claim, absent allegation "that
defendant played an active role in the prosecution").

The malicious prosecution claims against FedEx are
therefore dismissed.

**J.   Ronen's Negligence Claim Against FedEx**

Ronen also brings a claim for state law negligence
against all defendants, asserting, *inter alia*, that FedEx was
negligent in falsely reporting the package as marijuana, the
City was negligent in training and supervising its officers, and
the individual defendants were negligent in falsely arresting
Ronen.  TAC ¶¶ 120-127.  "Under New York law, the elements of a
negligence claim are: (i) a duty owed to the plaintiff by the
defendant; (ii) breach of that duty; and (iii) injury
substantially caused by that breach."  *Lombard v. Booz-Allen &
Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).  The Municipal
Defendants' arguments for dismissal of Oren and RDK's negligence
claims apply equally here.  Therefore, for the reasons laid out
in Section III.C-D, *supra*, Ronen's negligence claims against the
Municipal Defendants are dismissed.

For its part, FedEx argues that they did not owe Ronen
a duty because the Ground Tariff specifically disclaimed
liability.  As discussed in Section III.A, above, the Ground
Tariff cannot be noticed at this stage.  Still, the burden rests
with the plaintiff to identify a duty in support of a negligence

claim.  *Alfaro*, 210 F.3d at 114; *see also supra* Section III.C.

And beyond a passing reference to "Defendants' non-delegable

duties to Plaintiff," Ronen does not allege any actual duty that

FedEx owed to him, and thus no breach of duty.  Therefore, this

claim is dismissed against FedEx as well.

## K.    Intentional Infliction of Emotional Distress

Finally, Ronen brings a claim for intentional

infliction of emotional distress ("IIED") under state law,

against all defendants.  "The state law tort of intentional

infliction of emotional distress has four elements: (1) extreme

and outrageous conduct, (2) intent to cause severe emotional

distress, (3) a causal connection between the conduct and the

injury, and (4) severe emotional distress."  *Bender v. City of*

*New York*, 78 F.3d 787, 790 (2d Cir. 1996).

The first element requires a showing of conduct that

is "so outrageous in character, and so extreme in degree, as to

go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community."

*Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (2016).

IIED is, moreover, "a highly disfavored tort under New York law"

and "is to be invoked only as a last resort."  *Turley v. ISG*

*Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014).  It serves

primarily "to provide relief in those circumstances where

traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015).

In support of his claim, Ronen alleges that FedEx's "actions in reporting the shipment to the City as containing marijuana, when they knew that the shipment did not contain marijuana, were extreme and outrageous and caused Plaintiff severe emotional distress."  TAC ¶ 130.  He further asserts that City's actions in "failing to properly train and supervise its employees . . . were extreme and outrageous and caused Plaintiff severe emotional distress," *id.* ¶ 131, as did the individual officers' actions in falsely arresting him.  *Id.* ¶ 132.  These actions do not clear the high bar of extreme and outrageous conduct.  *Morales v. Kerr*, 828 N.Y.S.2d 345 (1st Dep't 2007) (dismissing IIED claim based on alleged false reports of criminal acts to government agencies).  Because he brings a host of other claims for the very same conduct alleged here, moreover, his IIED claim is plainly not a "last resort."  The claims for intentional infliction of emotional distress are therefore dismissed.

## V.   Conclusion

For the foregoing reasons, the motions to dismiss are granted in part and denied in part, as set forth above.

SO ORDERED.


_/s/ Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:    September 28, 2024
          Brooklyn, New York